UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER LEIGH HOLLAND,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Defendant. | No.  2:14-cv-0233 DAD<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1]  For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On February 9, 2011, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on October 15, 2005.  (Transcript

---

[1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c).  (See Dkt. Nos. 10 & 11.)

1

("Tr.") at 23.)  Plaintiff's applications were denied initially, (id. at 97-107), and upon reconsideration.  (Id. at 111-16.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on August 22, 2012.  (Id. at 42-56.)  Plaintiff was represented by an attorney and testified at that administrative hearing.  (Id. at 42-43.)  In a decision issued on September 28, 2012, the ALJ found that plaintiff was not disabled.  (Id. at 36.)  The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since October 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments:  seizure disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, the claimant can lift and or carry 20 pounds occasionally and 10 pounds frequently; she can stand for four hours in a workday; she can sit for six hours in a workday; she can never climb ladders, ropes or scaffolds; she cannot work at heights or around hazardous machinery; and she would be better suited for work involving simple instructions.
>
> 6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on December 1, 1981 and was 23 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

/////

2

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 25-35.)

On November 21, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's September 28, 2012 decision. (Id. at 3-5.) After receiving an extension of time to file a civil action, (id. at 1-2), plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 27, 2014.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts the following three principal claims: (1) the ALJ improperly rejected plaintiff's own subjective testimony; (2) the ALJ erred in his treatment of the medical opinion evidence of record; and (3) the ALJ's question to the Vocational Expert was incomplete.[2] (Pl.'s MSJ (Dkt. No. 15) at 8-15.[3])

**I.     Plaintiff's Subjective Testimony**

Plaintiff argues that the ALJ erred by rejecting her own testimony concerning the severity of her impairments. (Id. at 13-14.)

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has

---

[2] The court has reordered plaintiff's claims for purposes of efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

> presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

At the August 22, 2012 administrative hearing plaintiff testified, in relevant part, that the frequency of her seizures was "very unpredictable," in that "[s]ix weeks ago [she] had three seizures in four weeks," but prior to that she had not had a seizure in "maybe three months." (Tr. at 48.) According to plaintiff's testimony, it takes her "[a]bout three days" to resume the activities she was "doing before the seizure" and during that three day period she will "mostly

just rest and take it slow," and not "do very much." (Id. at 50.)

In his September 28, 2012 opinion, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (Id. at 30.) In this regard, the ALJ stated that plaintiff's "daily activities" were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Id.) Specifically, the ALJ noted that plaintiff "reported being able to cook complete meals," had "no problems with personal care; being able to do housework; being able to do laundry and dishes; and being able to go out alone." (Id. at 30-31.) Moreover, the ALJ noted that although plaintiff did "not drive due to her seizures," she was able to "go grocery shopping and handle money," as well as read, sew, play board games, do scrapbooking, use a computer, ride a bicycle and "take photos." (Id. at 31.) Finally, the ALJ noted that, although plaintiff's "boyfriend occasionally helps her," plaintiff was "apparently able to care for young children at home . . . without any particular assistance." (Id.)

It is well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Ninth Circuit, "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). See also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). "Rather, a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms only when either (1) the activities 'meet the threshold

for transferable work skills' or (2) the activities contradict her testimony." Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014) (quoting Orn, 495 F.3d at 639). Here, the ALJ's decision failed to explain how plaintiff's daily activities meet the threshold for transferable work skills or conflict with plaintiff's testimony concerning the frequency of her seizures and her recovery time from those seizures. The fact that plaintiff can often engage in the daily activities noted by the ALJ does not appear to conflict with plaintiff's testimony that she experiences unpredictable seizures that require her to rest for several days thereafter.

For the reasons stated above, the court finds that the ALJ did not offer a clear and convincing reason for rejecting plaintiff's subjective testimony regarding her symptoms. Accordingly, plaintiff is entitled to summary judgment in her favor with respect to this claim.

## II.     Medical Opinion Evidence

Plaintiff also argues that the ALJ erred by rejecting the opinion of plaintiff's treating neurologist, Dr. Jacqueline Chan. (Pl.'s MSJ (Dkt. No. 15) at 8-12.)

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. (Id. at 831.) In addition, greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'" Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. §

404.1527(d)(5)). Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, on June 1, 2011, plaintiff's treating neurologist, Dr. Jacqueline Chan, completed a Seizures Residual Functional Capacity Questionnaire. (Tr. at 384-86.) The ALJ's decision recounted Dr. Chan's opinion, noting, in relevant part, that Dr. Chan opined that plaintiff suffered from:

> complex partial seizures, with loss of consciousness, that last 1 to 2 minutes, with residual manifestations of confusion and irritability that last for 20 to 30 minutes, followed by the claimant sleeping all day.

(Id. at 32.) The ALJ also observed that, although Dr. Chan "did not provide the average frequency of the claimant's seizures," Dr. Chan did state that plaintiff's last three seizures occurred on December 4, 2010, March 4, 2011, and April 14, 2011. (Id.) The ALJ also acknowledged that Dr. Chan opined that, in addition to other limitations, plaintiff would "on average, be absent from work for three or four times per month." (Id.)

The ALJ found that the "majority of Dr. Chang's (sic) opinion is consistent with the record as whole, as well as with the claimant's activities of daily living, and testimony," and afforded "the majority of Dr. Chan's opinion . . . substantial weight." (Id.) However, the ALJ nonetheless afforded "minimal weight," to treating physician Dr. Chan's opinion that plaintiff "would be absent from work three to four times per month," finding that portion of Dr. Chan's opinion to be "inconsistent with the record as a whole, as well as internally inconsistent." (Id. at 32-33.)

The ALJ supported that determination by stating that plaintiff "testified that she had three seizures six weeks ago, but none in the three months prior to that, and she told the consultative examining physician that her seizures occur only every two to three months." (Id. at 32.) The ALJ also stated that Dr. Chan's opinion noted that plaintiff's "last three seizures occurred over a

8

period of four to five months." (Id.)  The ALJ went on to state that Dr. Chan's opinion reflected that plaintiff's seizures "only last for one to two minutes, with 20-30 minutes of residual effects," after which plaintiff "sleeps all day following a seizure." (Id.)  The ALJ concluded by finding that "[b]ased on these statements by the claimant and Dr. Chan, this would tend to indicate that, at most, the claimant would be absent from work for only one day every two to three months." (Id. at 33.)

As noted above, however, plaintiff actually testified at the administrative hearing that "[s]ix weeks ago," she suffered "three seizures in four weeks," and that, "[b]efore that it had been maybe three months," since her last seizure. (Id. at 48.)  Thus, plaintiff's testimony would be accurately characterized as reporting that over the course of a four-month span she had suffered four seizures, albeit with varying frequency. Dr. Chan's opinion reflected that plaintiff suffered seizures on December 4, 2010, March 4, 2011, and April 14, 2011, meaning plaintiff had suffered three seizures in a span of just over four months. Moreover, plaintiff testified that after each such seizure she required rest for three days thereafter to recover, which is indeed wholly consistent with the opinion rendered by treating physician Dr. Chan. In this regard, the ALJ's unsupported assertion that plaintiff "would be absent from work for only one day every two to three months," (id. at 33), is refuted by Dr. Chan's opinion and plaintiff's testimony, each of which reflect that plaintiff has suffered, on average, a seizure every month to two months, although with varying frequency, and that after each seizure plaintiff would require three days of rest in order to recover.

Moreover, Dr. Chan opined that the "precipitating factors" for plaintiff's seizures were "sleep deprivation, stress, emotion, menstrual cycle." (Id. at 384.)  Specifically, Dr. Chan's opinion that plaintiff would be absent from work three to four times per month was in response to a question asking her to "estimate, based upon [her] experience with the patient, and based upon objective medical, clinical and laboratory findings, how often [plaintiff] is likely to be absent from work as a result of the impairments or treatments." (Id.)  Thus, Dr. Chan's opinion was a prospective estimate based upon her treating relationship with plaintiff as well as objective medical evidence, about how often plaintiff would be absent from work, assuming plaintiff were working, as a result of both her seizures and her treatment for that condition. The reason given by

9

the ALJ for rejecting that treating physician opinion is based on a narrow retrospective examination of the, incorrect, average number of seizures plaintiff suffered while not working, which is a decidedly different question than that answered by Dr. Chan in her opinion of record.

Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Chan's opinion. Plaintiff, therefore, is also entitled to relief with respect to this claim.

### III.  Complete Hypothetical

Plaintiff also argues that in determining that she was able to perform jobs in the national economy the ALJ relied on the testimony of the Vocational Expert ("VE") that was provided in response to an inadequate hypothetical question which failed to account for all of plaintiff's limitations. (Pl.'s MSJ (Dkt. No. 15) at 14.)

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted). See also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."); Palomares v. Astrue, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012) ("Since the analysis of RFC was flawed and not based on the whole record, the VE's testimony based thereon has no evidentiary value, and the ALJ's finding that Mr. Palomares can perform his previous work is not based on substantial evidence in the whole record."); cf. SSR 83-14 ("Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.").

Here, because the ALJ erroneously rejected Dr. Chan's opinion that plaintiff would be absent from work three to four times per month, the hypothetical question posed by the ALJ to the VE did not include that limitation. (Tr. at 54-55.) Because the ALJ's hypothetical question to the VE did not reflect all of plaintiff's limitations, the ALJ could not properly rely on the VE's testimony to make the determination that plaintiff was able to perform jobs that existed in the national economy. See Bray, 554 F.3d at 1228 ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."); Werthy v. Astrue, 882 F.Supp.2d 1202, 1235 (D. Or. 2011) ("The ALJ's hypothetical question to the VE, although consistent with the ALJ's RFC assessment, failed to include all of Werthy's limitations and restrictions. The ALJ therefore could not rely on the VE's testimony to make a determination that Werthy is able to work."); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (in posing a hypothetical to VE "an ALJ is not free to disregard properly supported limitations").

Accordingly, the court finds that plaintiff is also entitled to summary judgment in her favor with respect to her claim that the ALJ failed to pose a legally adequate hypothetical question to the VE.

**IV.   Scope of Remand**

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

1  the meaning of the Social Security Act." Id. at 1021. See also Treichler v. Commissioner of
2  Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error,
3  but the record is uncertain and ambiguous, the proper approach is to remand the case to the
4  agency.").

5  Here, the court finds that the record has been fully developed, that the ALJ failed to
6  provide a legally sufficient reason for rejecting plaintiff's own testimony and the medical opinion
7  offered by plaintiff's treating neurologist, Dr. Chan. Moreover, if the plaintiff's testimony and
8  the medical opinion offered by Dr. Chan were properly credited, the ALJ would be required to
9  find plaintiff disabled on remand. In this regard, when asked at the August 22, 2012
10 administrative hearing a hypothetical that included all of the limitations indicated by Dr. Chan's
11 opinion and plaintiff's testimony, the VE testified that such limitations "would eliminate all jobs
12 in the national economy." (Tr. at 55.)

13 Accordingly, the court finds that in this case it is appropriate to remand with the direction
14 to award benefits. See Behling v. Colvin, 603 Fed. Appx. 541, 543 (9th Cir. 2015) ("Based on
15 the vocational expert's hearing testimony, who responded that a person with Behling's limitations
16 would be precluded from sustained work activity, there is substantial evidence to support a
17 conclusion that further proceedings are not required to determine Behling's RFC.");
18 Martinez v. Colvin, 585 Fed. Appx. 612, 613 (9th Cir. 2014) ("if Martinez's testimony and Dr.
19 Novak's opinion were properly credited, Martinez would be considered disabled. We therefore
20 reverse the decision of the district court and remand with instructions to remand to the ALJ for
21 the calculation and award of benefits")[4]; Garrison, 759 F.3d at 1023 ("Garrison satisfies all three
22 conditions of the credit-as-true rule and . . . a careful review of the record discloses no reason to
23 seriously doubt that she is, in fact, disabled. A remand for a calculation and award of benefits is
24 therefore required under our credit-as-true precedents."); Moore v. Comm'r of Soc. Sec. Admin.,
25 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly
26 rejected the testimony of the plaintiff's examining physicians); Ghokassian v. Shalala, 41 F.3d

---

[4] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1300, 1304 (9th Cir. 1994) (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (Dkt. No. 14) is granted;

    2. Defendant's cross-motion for summary judgment (Dkt. No. 16) is denied;

    3. The Commissioner's decision is reversed; and

    4. This matter is remanded with instructions to award benefits.

Dated: August 26, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\holland0233.ord.docx